PRONESTI *v.* PRONESTI.

1. DIVORCE—MODIFICATION OF DECREE—CANCELLATION OF ARREARAGES
   FOR SUPPORT OF CHILDREN—DENIAL OF VISITATION.
   Modification of decree of divorce whereby arrearages on husband's
   decreed obligation for support of minor children, who have
   now reached majority, were canceled *held,* justified, where wife
   after decree of divorce took the children out of the State and
   denied the husband his decreed rights of visitation and proofs
   indicate wife had not made attempts in good faith to collect
   child support payments which had been decreed.

2. SAME—MODIFICATION OF DECREE—COSTS.
   No costs are allowed upon wife's appeal from order canceling
   arrearages in payments decreed for support of minor children,
   where order of modification of decree of divorce is affirmed.

Appeal from Wayne; FitzGerald (Frank), J.
Submitted November 7, 1962. (Docket No. 47,
Calendar No. 49,355.) Decided December 4, 1962.

Bill by Angelo Pronesti against Vivian Pronesti
resulted in decree of divorce on cross-bill in 1946
with provision for support of minor children. After
order to show cause in contempt proceedings served
in 1960, plaintiff petitioned for cancellation of ar-
rears in support money. Decree modified canceling
all arrears. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  17A Am Jur, Divorce and Separation § 863.
   Retrospective modification of, or refusal to enforce, decree for
    alimony, separate maintenance or support.  6 ALR2d 1277.

*Norman N. Robbins,* for plaintiff.

*Livingston, Ross & Miller (Winston L. Livingston* and *Brian K. Millington,* of counsel), for defendant.

Carr, C. J.   This is an appeal from an order of the circuit court of Wayne county modifying a decree of divorce by canceling accrued payments for support of children of the parties.   Said decree was entered on June 5, 1946, on the cross-bill of defendant and cross-plaintiff.   There were at the time 2 minor children, a son and a daughter, then of the ages of 8 and 10 respectively.   The decree granted custody to defendant and provided that plaintiff and cross-defendant should pay the sum of $9 per week for each child until such child should reach the age of 17 years "or until the further order of the court." Plaintiff was granted the right of reasonable visitation of his children.

It appears that plaintiff did not make the payments and in September, 1946, an order was issued by the court requiring him to show cause on a date specified why he should not be adjudged guilty of contempt and punished accordingly.   The order was not served, and a subsequent attachment issued pursuant to court order was not served.   It is claimed that the address of Pronesti was not known at the time to either the defendant or the friend of the court.   Subsequently, in February or March, 1960, as it is claimed, defendant learned her former husband's address and advised the friend of the court thereof in August of that year.   Thereupon the outstanding attachment, issued in October, 1946, was served, appearance thereunder being set for September 30, 1960.

Plaintiff countered the proceeding instituted against him by filing a petition to modify the decree of divorce in such manner as to cancel the arrear-

age of the payments provided for therein, which aggregated the sum of $7,362 at the time the younger child reached the age of 17. He further asked that the attachment be dismissed. A hearing was duly had before the successor of the circuit judge who had granted the decree of divorce.

It appears from the opinion of the court filed following such hearing that counsel for the parties stipulated that the report of the friend of the court with reference to the matters in issue might be entered in the cause, and that the judge might consider the same in arriving at his decision. It was also agreed that the so-called "history card" on file in the office of the friend of the court might be introduced. It is further claimed, and not disputed, that both parties were in court at the time of the hearing and that each was questioned to some extent by counsel. However, the record before us does not set forth such questions and the answers thereto. The report made by the friend of the court was quite extensive and contained statements by the parties, verified under oath, as well as certain documents submitted with said statements. Included also were medical reports tending to indicate that neither party to the case was in good health.

From the stipulated proofs on the hearing it appeared that plaintiff husband accused defendant and appellant of concealing from him the whereabouts of the children, as a result of which he was unable to exercise the visitation privileges granted him by the decree of divorce. He claimed to have made inquiries of others whom he thought might be able to give him information with reference to the matter, but without success. It was also his claim that he went from Detroit to the State of California to search for the children but was unable to locate them, asserting that appellant had caused the children to be entered in school under the name of

"Baker" which was her name prior to her marriage to plaintiff. He also denied knowledge of any attempts made to enforce collection of the payments decreed until the writ of attachment (issued in 1946) was served on him in 1960.

It was appellant's claim in substance that she was unable to ascertain plaintiff's whereabouts although making attempts to do so, that, in consequence, she could not give to the office of the friend of the court of Wayne county information with reference thereto, and that plaintiff had intentionally concealed from her his place of residence. She undertook to explain her failure to press attempts to enforce the making of the payments in accordance with the divorce decree by asserting that she was unable to learn where plaintiff was living. It appears, however, that prior to the divorce Mrs. Pronesti and the children were in California where apparently she had relatives, that they returned to Detroit for awhile, that after the decree was granted she took the children from the State, returning to California, and that she remarried. It is further asserted, and without denial, that appellant and her children were in California for some time and that later she removed to Louisiana taking the children with her.

After consideration of the claims and counterclaims of the parties to the case the trial judge concluded that defendant deliberately pursued a course of conduct well calculated to avoid any opportunity on the part of plaintiff to visit his children, both of whom were past majority at the time of the hearing. Defendant's attitude in this respect was patently in accord with her assertion to a representative of the friend of the court, shortly preceding the granting of the decree of divorce, that she would not allow plaintiff to see the children because he was an unfit person to come in contact with them. Our examination of the record made be-

fore the trial judge brings us to the conclusion that he was fully justified in concluding that defendant had by her conduct prevented plaintiff from exercising the visitation rights granted him by the decree of divorce entered in 1946. The conclusion is further warranted that defendant's alleged attempts to locate plaintiff in order that she might inform the friend of the court as to his whereabouts were not pursued deliberately or in good faith. Apparently he was residing in the city of Detroit, where he was employed, and later in Lincoln Park.

In reaching his conclusion the trial judge relied on the decision of this Court in *Meyers* v. *Meyers,* 161 Mich 487. In that case following the institution of the suit for divorce the parties reached an agreement which provided in part that the defendant husband should pay, after a decree of divorce was granted to the plaintiff, for the support of minor children a specified amount per week, and that he should have the right to see and visit said children at reasonable times. For some reason, or perhaps through inadvertence, the latter provision was omitted from the decree when signed. Shortly thereafter the plaintiff remarried and left the State, taking the children with her. The father was in consequence deprived of the stipulated right of visitation. As in the case at bar, contempt proceedings were instituted against him as a result of which he filed a petition to modify the decree by relieving him from further obligation thereunder on the ground that he had been improperly deprived of the privilege of seeing his children. The trial court granted the relief sought by defendant husband, and plaintiff appealed. Based on the removal of the children from the State of Michigan by plaintiff, this Court concluded that there was a change of circumstances of such character as to furnish a proper basis for a modification of the decree. Citing

the prior case of *Myers* v. *Myers,* 143 Mich 32, the Court affirmed the decree as modified by the trial court, thereby relieving the defendant husband from the obligation to make further payments for the support of the minor children.

In *Chipman* v. *Chipman,* 308 Mich 578, plaintiff, in February, 1927, was granted an uncontested decree of divorce from defendant and was given the custody of the minor child, then 4 years of age. An award of $10 per week for the care and maintenance of said child until he attained the age of 16 years was contained in the decree. Contempt proceedings were instituted in March, 1942, for failure to make such payments. Thereupon defendant filed a petition, as in the case at bar, for modification of the decree by canceling all payments in default. It was defendant's claim in the case that there was an agreement between the parties that plaintiff would not undertake to enforce payment for the support of the minor child provided defendant would refrain from visiting said child. Citing prior decisions, this Court reversed an order of the trial court denying the relief sought by defendant, and canceled the principal portion of the arrearage conditioned on defendant's paying $20 per month pending the appeal, as provided by the trial court's order entered in February, 1943, and the further sum of $300 in monthly installments of $20 each. The Court concluded that plaintiff was dilatory in her efforts to collect the payments as they accrued. This decision was cited with approval in *Sonenfeld* v. *Sonenfeld,* 331 Mich 60.

In the case at bar we find that the trial judge was fully justified under the proofs submitted to him in modifying the decree of divorce by canceling the arrearages in payments decreed for the support of the minor children. Defendant's conduct operated to prevent plaintiff from seeing his children during

the period of their minority, and the proofs further justify the conclusion that she did not attempt in good faith to make collection of the payments ordered by the decree of divorce for the support of the minor children during the period of time that the decree required such payments to be made. As a result of the divorce she became the owner of certain real estate in the city of Detroit, which she sold prior to removal to the State of California. Her claim that she was forced to make such removal for financial reasons is not in any way corroborated. There is no showing that she was promised assistance by relatives in that State or that opportunities for suitable employment were not as good in Michigan as elsewhere.

The order of the trial court modifying the decree of divorce in the manner indicated is affirmed. In view of the nature of the case no costs are allowed.

DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., did not sit.