BROWN v TURNBLOOM

Docket No. 78-719. Submitted October 5, 1978, at Grand Rapids.—
Decided March 20, 1979.

Plaintiff Shirley Brown and defendant Richard Turnbloom were
divorced in Wisconsin in 1975. Plaintiff was awarded custody of
their four children, but due to the lack of personal service on
defendant, the amount of child support was left open for later
determination. In 1977 plaintiff initiated proceedings in Wis-
consin under the Uniform Reciprocal Enforcement of Support
Act (URESA) to compel the defendant, a Michigan resident, to
pay reasonable child support. The Wisconsin court found that
defendant owed a duty of support to his children and transmit-
ted the necessary documents to the Wexford County Friend of
the Court who recommended that the defendant be ordered to
pay $14 per week per child. The Wexford Circuit Court, Walter
F. Ransom, J., thereafter heard the plaintiff's complaint for
child support under the URESA and ordered the defendant to
pay $7 per week per child. The trial judge noted that in
determining the amount of child support he had considered the
fact that the defendant had not been allowed to visit with his
children. Plaintiff appeals. *Held:*

1. The circuit judge erred in considering the alleged denial of
visitation rights in determining the amount of child support to
be paid by defendant.

2. The purpose of the URESA is to improve and extend by

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Desertion and Nonsupport § 128.
[2] 23 Am Jur 2d, Desertion and Nonsupport §§ 131, 136.
    24 Am Jur 2d, Divorce and Separation §§ 801, 802.
[3] 23 Am Jur 2d, Desertion and Nonsupport § 136.
    Construction and application of state statutes providing for recipro-
    cal enforcement of duty to support dependents. 42 ALR2d 768.
[4] 24 Am Jur 2d, Divorce and Separation § 801.
    Complete denial of visitation rights of divorced parent. 88 ALR2d
    148.
[5, 8] 23 Am Jur 2d, Desertion and Nonsupport § 131.
[6] 23 Am Jur 2d, Desertion and Nonsupport § 133.
[7] 24 Am Jur 2d, Desertion and Nonsupport §§ 810, 811.
[9] 23 Am Jur 2d, Desertion and Nonsupport § 135.
    24 Am Jur 2d, Divorce and Separation §§ 810, 811.

reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto.

3. The URESA contemplates *ex parte* proceedings where only duties of support are adjudicated; it does not provide for adversary proceedings where other matters are to be decided and has no mechanism for requiring the custodial parent to appear to answer allegations of the noncustodial parent as to the denial of visitation privileges.

Reversed and remanded.

C. J. BYRNS, J., dissented and would hold:

1. The trial judge should have the same options open when the noncustodial parent is complaining of denial of visitation rights in a URESA action as he or she would have in proceedings based on a Michigan divorce order or judgment.

2. The Court of Appeals should not read into URESA a mandatory rule that it is the noncustodial but supporting parent who must always go to the other state to obtain enforcement of visitation rights which have been denied by the custodial parent.

3. It creates two classes of citizens and is a denial of equal protection to deny a Michigan-resident obligor-parent the right to have a court enforce visitation rights by suspending or modifying child support obligations just because the matter before the court is a URESA petition rather than a Michigan judgment.

4. Defendant's duty of support should be decided in accordance with Michigan law.

5. The Court of Appeals, rather than reading the act as automatically denying the hearing and decision of any claim of abuse or denial of visitation rights, should interpret the URESA to permit the trial judge to consider such a claim and act in accordance with the best interests of the child as he would do in any other case.

OPINION OF THE COURT

1. DIVORCE — PARENT AND CHILD — SUPPORT OF CHILDREN — UNIFORM RECIPROCAL ENFORCEMENT OF SUPPORT ACT — PURPOSE — STATUTES.

The purpose of the Uniform Reciprocal Enforcement of Support Act is to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto (MCL 780.152; MSA 25.225[2]).

2. Divorce — Parent and Child — Support of Children — Visita-
   tion Rights — Uniform Reciprocal Enforcement of Support
   Act — Appeal and Error.

   A trial court erred, in a Uniform Reciprocal Enforcement of
   Support Act action where Michigan is the responding state, in
   considering the alleged denial of visitation rights to the defen-
   dant in determining the amount of child support to be paid by
   the defendant; the responding court is without subject matter
   jurisdiction over matters of visitation and may not condition
   payment of support on the observance of visitation rights.

3. Divorce — Parent and Child — Support of Children — Adver-
   sary Proceedings — Uniform Reciprocal Enforcement of
   Support Act — Statutes.

   The Uniform Reciprocal Enforcement of Support Act is expressly
   limited in its scope to the adjudication of a party's duty of child
   support; the act contemplates *ex parte* proceedings for such
   purpose and does not provide for adversary proceedings where
   other matters are to be decided (MCL 780.151 *et seq.;* MSA
   25.225[1] *et seq.).*

                    Dissent by C. J. Byrns, J.

4. Divorce — Parent and Child — Support of Children — Uni-
   form Reciprocal Enforcement of Support Act — Visitation
   Rights — Denial of Visitation — Remedy.

   *The Uniform Reciprocal Enforcement of Support Act should be
   interpreted to permit a trial judge in the responding state to
   consider a claim of abuse or denial of visitation rights and act
   in accordance with the best interests of the child to fashion a
   suitable remedy, such as the suspension or reduction of child
   support, in order to win for the child visitation with a parent.*

5. Divorce — Parent and Child — Support of Children — Visita-
   tion Rights — Denial of Visitation — Uniform Reciprocal
   Enforcement of Support Act.

   *A trial judge should have the same options open in a Uniform
   Reciprocal Enforcement of Support Act action where a noncus-
   todial parent is complaining of a denial of visitation rights as
   he or she would have in proceedings based on a Michigan
   divorce order or judgment.*

6. Divorce — Parent and Child — Support of Children — Uni-
   form Reciprocal Enforcement of Support Act — Visitation
   Rights.

   *The Uniform Reciprocal Enforcement of Support Act should not*

*be read as containing a mandatory rule that it is the noncustodial but supporting parent who must always go to the other state to obtain enforcement of visitation rights which have been denied by the custodial parent.*

7. DIVORCE — PARENT AND CHILD — SUPPORT OF CHILDREN — MODIFICATION OF OBLIGATION — VISITATION RIGHTS.

*Trial judges in Michigan have the authority to suspend or modify child support obligations to enforce visitation rights granted in a Michigan judgment as long as the child is not adversely affected.*

8. DIVORCE — PARENT AND CHILD — SUPPORT OF CHILDREN — UNIFORM RECIPROCAL ENFORCEMENT OF SUPPORT ACT — STATUTES.

*The section of the Michigan Uniform Reciprocal Enforcement of Support Act regarding enforceable duties of support requires that an obligor's duty of support be decided in accordance with Michigan law (MCL 780.158; MSA 25.225[8]).*

9. DIVORCE — PARENT AND CHILD — VISITATION RIGHTS — SUPPORT OF CHILDREN — UNIFORM RECIPROCAL ENFORCEMENT OF SUPPORT ACT — EQUAL PROTECTION.

*The practice of denying a Michigan-resident obligor-parent the right to have a court enforce child visitation rights by suspending or modifying child support obligations, where the matter before the court is a Uniform Reciprocal Enforcement of Support Act petition rather than a Michigan judgment, creates two classes of citizens and is a denial of equal protection of the law.*

*Burton A. Hines, Jr.,* Wexford County Prosecuting Attorney, for plaintiff.

Before: D. F. WALSH, P.J., and T. M. BURNS and C. J. BYRNS,* JJ.

D. F. WALSH, P.J. Plaintiff Shirley Brown and defendant Richard Turnbloom were divorced in Wisconsin in 1975. Plaintiff was awarded custody of their four children. Because of the lack of personal service on defendant, the amount of child support was left open for determination at a later date. In 1977 plaintiff initiated proceedings in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Wisconsin under the Uniform Reciprocal Enforcement of Support Act (hereinafter URESA) to compel defendant, a Michigan resident, to pay reasonable child support. Plaintiff was then receiving $411 per month from the Portage County, Wisconsin, Department of Social Services for the support of the children. The Wisconsin court found that defendant owed a duty of support to his children and transmitted the necessary documents to Wexford County, Michigan. The Wexford County Fried of the Court recommended that defendant be ordered to pay $14 per week per child. The Wexford County circuit judge ordered defendant to pay $7 per week per child.

At the Wexford County hearing on the URESA petition the judge, over the objection of the prosecuting attorney who represented plaintiff, heard testimony by defendant that he had not been allowed to visit with his children.[1] In ordering defendant to pay $7 per week per child, the judge noted that, in determining the amount of child support, he had considered the fact that defendant had not been allowed to visit with his children. The prosecutor's petition for reconsideration was denied. Plaintiff appeals.

The issue presented for our determination here is this. In a URESA action where Michigan is the responding state, may the Michigan circuit judge, in determining the amount of support, take into consideration the alleged denial of the obligor's visitation rights?

The purpose of URESA (MCL 780.151 *et seq.;*

---

[1] Defendant's testimony was not entirely clear as to the reasons he was unable to visit with his children. At one point he indicated that he did not go to their home because the police were after him. He also testified that plaintiff did not cooperate with him with regard to visitation. For purposes of this appeal, we interpret defendant's testimony as indicating that plaintiff prevented him from visiting with the children.

MSA 25.225(1) *et seq.)* is "to improve and extend
by reciprocal legislation the enforcement of *duties
of support* and *to make uniform the law* with
respect thereto". MCL 780.152; MSA 25.225(2).
(Emphasis supplied.) To effectuate these purposes
we hold that the circuit judge erred in considering
the alleged denial of visitation rights in determin-
ing the amount of child support to be paid by
defendant.

We find persuasive the reasoning of the Florida
court in *Vecellio v Vecellio,* 313 So 2d 61 (Fla App,
1975), where it was noted that URESA focuses on
only one aspect of domestic relations—the duty of
support. The act does not contemplate that the
custodial parent come to the responding state to
defend against claims arising from other domestic
relations matters. Aggrieved noncustodial parents
should return to the state of divorce to adjudicate
other matters. *Id.* at 62. Accord, *Grosse v Grosse,*
347 So 2d 1099 (Fla App, 1977).

In the following cases courts of various jurisdic-
tions have held that the responding court is with-
out subject matter jurisdiction over matters of
visitation and may not condition payment of sup-
port on observance of visitation rights: *Kline v
Kline,* 260 Ark 550; 542 SW2d 499 (1976), *Pifer v
Pifer,* 31 NC App 486; 229 SE2d 700 (1976), *Hoover
v Hoover,* — SC —; 246 SE2d 179 (1978). In each
case the reviewing court cited that portion of the
act which provides, "Participation in any proceed-
ings under this act shall not confer upon any court
jurisdiction of any of the parties thereto in any
other proceedings". MCL 780.172; MSA 25.225(22).

In *Robinson v Harris,* 87 Mich App 69; 273
NW2d 108 (1978), the defendant father, a Michi-
gan resident, challenged a court order requiring
him to pay child support. The plaintiff mother had

been awarded custody of the parties' children following their divorce. Since the divorce, the children had become increasingly embittered toward defendant. There was no longer any possibility of a meaningful relationship between defendant and his children. The plaintiff was an Ohio resident and a URESA petition was filed in her name seeking child support payments from defendant. The following language of this Court is particularly relevant to the stiuation of the instant plaintiff, a welfare recipient:

"The custodial parent, the mother in this case, is receiving aid from the State of Ohio for the support of her minor children. Under the Uniform Reciprocal Enforcement of Support Act, adopted in both Ohio and Michigan, the State of Ohio is entitled to reimbursement from a person liable under a proper order of support where the state has itself made support payments. MCL 780.159; MSA 25.225(9). Thus, the real party in interest on the side of the plaintiff is the State of Ohio. Whatever the decision of this Court, the named plaintiff will not be affected. To speak in terms of punishing the named plaintiff for her conduct regarding the children or of forcing compliance with court orders by withholding support misses the mark." *Id.* at 71.

We adopt the view expressed in the foregoing cases. URESA makes no mention of visitation matters. Its scope is expressly limited to support. The act contemplates *ex parte* proceedings where only duties of support are adjudicated. It does not provide for adversary proceedings where other matters are to be decided. There is no mechanism for requiring the custodial parent to appear to answer allegations of the noncustodial parent as to the denial of visitation privileges. Adjudication of visitation matters is, therefore, best left to the state of divorce.

Our holding finds support in the history of Michigan's adoption of the Uniform Reciprocal Enforcement of Support Act. There have been two major versions of the act approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association—the original act, as adopted in 1950 and amended in 1952 and 1958, and the revised act of 1968. 9 ULA, Uniform Reciprocal Enforcement of Support Act, Historical Note, p 805. Michigan adopted most of the 1950 act and only the 1952 amendments. *Id.,* General Statutory Notes, p 892. Of particular significance to the issue raised in the instant case was the Michigan Legislature's failure to adopt § 21 of the 1950 act as amended in 1958. That section provided that, if the complainant was absent from the responding state and the respondent presented evidence constituting a defense, the responding court was to continue the case for further hearing and submission of evidence by both parties. *Id.* at 922. See *id.* Commissioners' Prefatory Note (1958), p 886. Since the Michigan statute contains no provision suggesting that an adversary proceeding was contemplated by the Legislature, we are convinced that a streamlined process focusing solely on the issue of support was intended. The lack of due process protections for the absent custodial parent compels this conclusion.

Although it has not been adopted in Michigan it is of interest to note that, with particular reference to visitation, the 1968 revised act expressly provides, in § 23, that "the determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court". *Id.* at 862. The comment of the commissioners with regard to this amendment suggests

that it was perhaps not intended to indicate a change in their original intent as to the scope of inquiry in URESA proceedings. According to the commissioners, the 1968 amendments, like previous amendments, were designed only "to plug loop holes and cure defects in the enforcement procedure". *Id.,* Commissioners' Prefatory Note, p 806.[2]

The Legislature failed to provide for adversary proceedings in URESA matters. We decline to engraft into Michigan's version of the act the due process protections which would be necessary before issues such as visitation could be fairly considered.

Accordingly, we reverse the order setting the amount of child support and remand for further proceedings consistent with this opinion.

No costs, a public question.

T. M. Burns, J., concurred.

C. J. Byrns, J. *(dissenting).* I must respectfully dissent from the decision of the majority because I believe, that in protecting the best interests of the children, the trial judge should have the same options open when the noncustodial parent is complaining of denial of visitation rights in a URESA action as he or she would have in proceedings based on a Michigan divorce order or judgment.

This is a real problem frequently faced by circuit judges of this state especially considering the

---

[2] Although there is some Michigan authority suggesting that support obligations and visitation rights are interrelated, see, *e.g., McLauchlin v McLauchlin,* 372 Mich 275; 125 NW2d 867 (1964), *Pronesti v Pronesti,* 368 Mich 453; 118 NW2d 254 (1962), the recent trend is contrary, see, *Stevenson v Stevenson,* 74 Mich App 656, 658, fn 1; 254 NW2d 337 (1977), *Henshaw v Henshaw,* 83 Mich App 68; 268 NW2d 289 (1978), *Robinson v Harris, supra.* In any event, the nature of a URESA proceeding is significantly dissimilar to that of an action involving enforcement of support obligations between parties divorced in Michigan and present at the Michigan enforcement proceedings.

frequency of divorce in a nation whose people are becoming more migratory. Children of broken homes have a natural right and need—sometimes more than those in homes with both parents—for the love, affection and companionship of *both* separated parents. Visitation is often more important to such a child than it may be to the noncustodial parent. In some cases visitation may be more important to a child's welfare than monetary support from the absent parent.

Each divorce case involving children, each child involved in a divorce case, is different and matters affecting them must be decided individually where their best interests may be at issue.

It is not wise or equitable to absolutely deny the trial judge in URESA cases the right, when he or she finds a need for child visitation, to fashion a suitable remedy *(e.g.,* deny, suspend or reduce support, or hold the same in escrow with the clerk or friend of the court) in order to win for the child visitation with a parent.

Presumably a trial judge, who each year has hundreds of divorce cases involving children on the docket, is skilled and experienced enough, where lack or loss of visitation is claimed in defense of a support obligation, to recognize the difference between a parent who is merely trying to avoid paying support and one who is sincerely concerned for the children.

While it is important to protect the pecuniary rights of taxpayers, who my experience would indicate are more often than not supporting URESA children, it is also essential to protect the child's, as well as the parent's rights of visitation, and, in the appropriate case, to use a support order to encourage the absent custodial parent or the authorities in the petitioning state to give

visitation rights to the respondent parent or at least give serious consideration to the matter. I cannot make the differentiation between who the real complainant is in a URESA action a basis for decision as *Robinson v Harris,* 87 Mich App 69; 273 NW2d 108 (1978), appears to do.

It does not seem to me that we should read into URESA a mandatory rule that it is the noncustodial but supporting parent who must always go to the other state to obtain enforcement of visitation rights which have been denied by the custodial parent. There are cases where the custodial parent is much more able to travel than the other parent.

The judge in Michigan, if permitted to hear the facts of a denial of visitation claim, may determine that a denial, suspension, reduction or escrow of support money will best persuade the custodial parent to cooperate in respecting visitation for the other parent. If the real motivation to collect or enforce support in the demanding state is a social or public agency rather than the custodial parent, then it may be the one to either encourage the custodial parent to cooperate in visitation, or else to take action in a court having jurisdiction over such parent to compel visitation rights.

Michigan recognizes in the enforcement of visitation rights granted in a Michigan judgment that as long as the child is not adversely affected, trial judges have the authority to suspend or modify child support obligations to enforce visitation rights. *McLauchlin v McLauchlin,* 372 Mich 275; 125 NW2d 867 (1964), *Pronesti v Pronesti,* 368 Mich 453; 118 NW2d 254 (1962), *Myers v Myers,* 143 Mich 32; 106 NW 402 (1906).

To deny a Michigan-resident obligor-parent the same right to have a court enforce visitation rights by such use of support orders, just because the

matter before the court is a URESA petition rather than a Michigan judgment, creates two classes of citizens and is a denial of equal protection of the law. Such result also is contrary to MCL 780.158; MSA 25.225(8), which I interpret as requiring the duty of support to be decided in accordance with Michigan law.

Where this issue of the authority of the responding court to consider visitation in URESA proceedings has arisen, some states have taken what to me is the better position, which is that a court can consider the issue and condition payment of support on observation of visitation rights. *New Jersey v Morales,* 35 Ohio App 2d 56; 299 NE2d 920 (1973), *Porter v Porter,* 25 Ohio St 2d 123; 267 NE2d 299 (1971), *Chandler v Chandler,* 109 NH 477; 256 A2d 157 (1969), *Curry v Felix,* 276 Minn 125; 149 NW2d 92 (1967), *Daly v Daly,* 39 NJ Super 117; 120 A2d 510 (1956), *aff'd* 21 NJ 599; 123 A2d 3 (1956).

In leaving to the judge in a URESA proceeding the right to consider and in the appropriate case protect visitation rights by an appropriate support order, it is axiomatic that the best interest of the child is paramount. First among the questions to be asked is how the child's interest will be affected by the support order. Is the custodial parent unable to adequately provide for the child's needs absent support from the other parent? Is a public agency supporting the child, and, if so, can it be enlisted to help persuade the custodial parent to make visitation available?

It is assumed that the judge, before using support as a vehicle for enforcement of visitation, has first been satisfied that the noncustodial parent is sincere; that he or she is a proper person with the necessary facilities for visitation; and that the

custodial parent is denying or abridging visitation
without good cause. The judge should not hesitate
to use the local friend of the court and prosecutor
as well as any appropriate agency in the locale of
the custodial parent to secure such information. If
reasonable, the custodial parent should be asked to
appear to give evidence, or, if possible, evidence
can be supplied by deposition or interrogatories. It
is also within the realm of possibility to request
the petitioning court to hold a hearing on visita-
tion and make its findings or recommendations.

I recognize that what I recommend would mean
more work for the trial courts than obtains if they
are in the position to say that visitation com-
plaints cannot be heard in URESA cases, but I
believe our courts have a duty to the children
involved, even though those children are located in
another state. We also have a duty to the Michi-
gan-resident parent who is being denied rights
available to other residents not involved in a
URESA action.

I submit that, rather than to read the act as
automatically denying the hearing and decision of
any claim of abuse or denial of visitation rights in
URESA cases, this Court in this case of first
impression in Michigan should interpret the act as
I do to permit the trial judge to consider such a
claim and act in accordance with the best interests
of the child as the judge would in any other case.

In *Chandler v Chandler, supra,* the New Hamp-
shire Supreme Court specifically found (as hope-
fully the appellate authority of this state will) that
the provision of the act reading: "Participation in
any proceeding under this chapter shall not confer
upon any court jurisdiction of any of the parties
thereto in any other proceeding" did not "preclude
a court from reducing a support order until such

time as agreement may be reached by the parties as to reasonable rights of visitation". 109 NH at 479, 480.

It seems to me that limiting URESA actions to consideration of support only, on grounds of ability to pay, can work harm to those most vitally involved, the children.

I would affirm the trial court.