KARIN CONRAD, APPELLANT, V.
PHILLIP C. CONRAD, APPELLEE.

304 N.W.2d 674

Filed April 17, 1981.  No. 43288.

Lawrence H. Yost of Yost, Schafersman, Yost, Lamme & Hillis for appellant.

Richard J. Spethman for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

PER CURIAM.

This is an appeal in a contempt proceeding against the respondent, Phillip Conrad, for failure to pay child support. In response to an order to show cause the respondent filed an application for an order suspending all child support payments due after January

1963. The trial court found that the petitioner, Karin Conrad, was equitably estopped from collecting accrued child support and permanently enjoined the petitioner from attempting to collect all unpaid child support obligations. The petitioner has appealed.

The petitioner and respondent were married on April 13, 1960. A daughter, Debby Anne Conrad, was born November 17, 1960. The petition for dissolution was filed on September 27, 1961, and a decree of dissolution entered on August 3, 1962. The decree awarded custody of the minor child to petitioner and provided that respondent should pay child support in the amount of $10 per week until such time as the minor child reached 21 years of age, became married, or self-supporting. The respondent was granted reasonable visitation rights.

The record indicates that while the dissolution proceeding was pending, the respondent failed to make some of the payments for temporary child support. The respondent testified that he did not make the payments because he was experiencing difficulty in exercising his visitation rights. After the dissolution, the respondent regularly exercised his rights of visitation through December 1, 1962.

On or about September 15, 1962, after the dissolution, the respondent learned that the petitioner planned to remarry and take Debby Anne to Germany. Based on this information the respondent filed an application on September 19, 1962, for a temporary restraining order to prevent the removal of Debby Anne from the court's jurisdiction. On October 18, 1962, a restraining order was granted. The petitioner denied knowledge of this order or of any subsequent pleadings filed by respondent pertaining to support and visitation rights.

On December 9, 1962, the petitioner married Kent R. Warren, a serviceman stationed at Fort Leonard Wood, Missouri. This marriage took place during the 6-month period before the decree of dissolution had become final.

On January 8, 1963, the respondent filed an application for an order requiring the petitioner to show cause why he had been denied visitation rights since December 1, 1962. On January 8, 1963, the court ordered the petitioner to appear and show cause why the respondent had been denied visitation privileges. The record does not show whether this order was complied with. A second application for an order to show cause was made on February 6, 1963, in which the respondent prayed for an order requiring the petitioner to permit visitation or, in the alternative, to discontinue child support payments. The record does not show any disposition of this final application.

The respondent made support payments until January 15, 1963. The last time he saw his daughter was December 1, 1962.

The petitioner, her new husband, and Debby Anne lived in Germany from February 1963 until the first part of 1966. During this time Phillip was not aware of their exact location and did not correspond with his daughter.

In 1965 the petitioner and Debby Anne returned to Omaha for a wedding. The petitioner did not attempt to contact the respondent at that time. In 1966 Warren took a job with the Omaha Public Power District and the family moved to North Bend, Nebraska, where they were living at the time this action was commenced.

The petitioner made no attempt to contact the respondent during the 14 years she and Debby Anne resided in North Bend. Since 1962 the only contact Debby Anne has had in relation to the respondent was in 1974 when her mother showed her a picture of her natural father.

The respondent throughout this period has resided in Omaha, Nebraska, and has been employed by the Omaha Police Department. The respondent has also remarried and now has 3 children from his second marriage. He testified at trial that he would not recognize his daughter if she walked into the courtroom.

We have held in many cases that accrued child support payments are not subject to modification. In *Ferry v. Ferry*, 201 Neb. 595, 600, 271 N.W.2d 450, 453-54 (1978), we said: "Where a divorce decree provides for the payment of stipulated sums monthly for the support of a minor child or children, contingent only upon a subsequent order of the court, such payments become vested in the payee as they accrue. The courts are without authority to reduce the amounts of such accrued payments."

The proper remedy for the respondent in this action would have been to seek a modification of the decree on the basis of changed circumstances before the payments accrued. Apparently, no disposition was made of the application filed by the respondent on February 6, 1963.

In *Eliker v. Eliker*, 206 Neb. 764, 772-73, 295 N.W.2d 268, 273 (1980), the father had suspended payment of child support because of a denial of visitation rights. We held: "This jurisdiction is committed to the view that courts of this state are without authority to forgive accrued child support and that such payments continue to accrue in accordance with the court's previous order until paid in full or otherwise modified by the court. See, *Smith v. Smith*, 201 Neb. 21, 265 N.W.2d 855 (1978); *Ruehle v. Ruehle*, 169 Neb. 23, 97 N.W.2d 868 (1959). The fact that a mother in whose custody a minor child has been placed by the court refuses to permit a father ordered to pay child support to exercise his rights of visitation does not justify the father's withholding the payment of child support. The father is not without remedy and may make application to the court for further orders requiring the mother to permit the father to exercise his right of visitation. The right of visitation, however, is not a quid pro quo for the payment of child support and the mother's action does not justify the father's failure to pay. . . .

"The fact that Mrs. Eliker may have improperly

and without justification prevented Mr. Eliker from exercising visitation rights with his daughter, did not either entitle or justify Mr. Eliker's failing to continue making child support payments as required. Neither of the parties is authorized to interfere with the court's orders and only the court can determine what, if any, adjustments should be made."

The respondent seeks to invoke the doctrine of equitable estoppel as applied in *Smith v. Smith*, 201 Neb. 21, 265 N.W.2d 855 (1978), to avoid the payment of accrued child support. In the *Smith* case, however, there was a reliance in good faith upon statements or conduct of the party estopped and a change of position to the injury or detriment of the party claiming estoppel. Unlike the *Smith* case, there is in this case no evidence of detrimental reliance and a change of position on the part of respondent. Equitable estoppel is inapplicable to the present case.

The respondent's remedy was to obtain a modification of the decree at the time of the alleged change in circumstances. Having failed to obtain a modification, this court is now without jurisdiction to reduce the accrued support payments vested in the petitioner.

The judgment of the District Court is reversed and the cause remanded with directions to dismiss the application of the respondent.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., dissenting in part.

I concur in that part of the opinion which holds that accrued payments of child support are not subject to modification. I dissent from the holding that the petitioner is not equitably estopped to enforce payment of the accrued amounts.

The majority opinion focuses upon the failure of the respondent to obtain a modification of the decree in accordance with his application filed on February 6, 1963. It ignores the inequitable conduct of the petitioner.

There can be little doubt but that the respondent was entitled to relief upon his application filed in 1963. The grounds for relief are admitted by the petitioner or shown in the record. In *Prell v. Prell*, 181 Neb. 504, 505, 149 N.W.2d 104, 105 (1967), we said: "We hold that where the decree of divorce gives visitation rights, the law contemplates that the children shall remain within the state so that the rights may be exercised. The mother's removal of the children from the state without the consent of the father or of the court may be sufficient change of circumstances to justify the court in suspending or reducing the amount of child support payments until the children have returned to the state."

This is not a case in which the father was indifferent to his visitation rights or the removal of his child from the jurisdiction. Upon his application, a restraining order to prevent the removal of the child from the jurisdiction was issued on October 18, 1962. This order was approved as to form by the petitioner's attorney of record.

The petitioner, in disregard of the limitations of the decree, remarried on December 9, 1962. Then, without the permission of the trial court, took the child to Germany, effectively depriving the respondent of his visitation rights for a period of 3 years.

At no time after January 1963 did the petitioner request or demand the support payments which were provided for in the decree. The reason is obvious. The petitioner knew that she would have to afford the defendant his right of visitation if she expected to receive support payments. Instead, she chose to raise the child completely separate and apart from the respondent so that the child would have no opportunity to know her natural father. Now, after the child has reached her majority, the petitioner demands payment of the accrued child support.

In *Smith v. Smith*, 201 Neb. 21, 265 N.W.2d 855 (1978), we held that a mother who had obtained a

relinquishment from the father was estopped to collect accrued child support after the date that the adoption could have been completed even though no adoption ever took place. We said: "This court does not have authority to reduce past-due installments of child support. This is not to say, however, that it may not find in a proper case that a party has equitably estopped herself from collecting installments accruing after some affirmative action which would ordinarily terminate future installments. The securing of the consent of the father to an adoption by another of his child is such action which by its nature should terminate further liability for child support." *Id.* at 28, 265 N.W.2d at 860. In *Williams v. Williams*, 206 Neb. 630, 294 N.W.2d 357 (1980), we again recognized that equitable estoppel may prevent the enforcement of accrued child support.

The doctrine of clean hands which bars redress to those guilty of improper conduct in the matter as to which they seek relief is also applicable in proceedings of this nature. In cases involving factual situations similar to this case, other courts have held that payment of accrued child support will not be enforced.

In *Smith v. Smith*, 282 Minn. 190, 193-95, 163 N.W.2d 852, 856-57 (1968), the court refused to enforce payment of accrued child support. The court said: "Here, the father violated the divorce decree by failing to make the monthly support payments expressly required by the decree. The mother, however, also impliedly violated the decree by surreptitiously removing the minor daughters to the United Arab Republic, thereby defeating the right to reasonable visitation reserved to the father and provoking his refusal to pay support.

"Applying the equitable doctrine of 'unclean hands,' it is clear that a party who has initially violated a divorce decree should not under ordinary circumstances be permitted to enforce the decree against

the other party even though the latter subsequently violates the decree. This rationale seems to be the underlying theoretical basis for the well-established and oft-cited Minnesota rule first promulgated in Eberhart v. Eberhart, 153 Minn. 66, 189 N.W. 592, that, absent unusual circumstances, where a mother by wrongful or malicious conduct deprives the father of visitation rights or where she removes the child to another state and does not inform the father of the removal or the whereabouts of the child, the father is relieved of the obligation to continue making support payments accruing thereafter.

"In Michalson v. Michalson, 263 Minn. 356, 357, 116 N.W.2d 545, 547, we clarified this rule by cautioning that it is 'not a hard-and-fast rule which must have strict application in each case' to which it may appear to apply. Rather, a revision of child support payments depends upon the particular facts of each case. We emphasize, as we did in Michalson, that the welfare of the child or children of the marriage is the paramount consideration, and that providing support is primarily the father's parental duty. Thus, unlike the situation in which a husband might rely upon the commonly accepted view of automatic abatement of payment of alimony upon remarriage of the wife, a father should not regard his obligation to pay support terminated where the mother wrongfully or maliciously deprives him of his visitation rights or otherwise defeats such rights by surreptitious removal of the children from the jurisdiction of the court. When such occurs, a proper concern by the father for the welfare of the children and regard for his duty to provide support makes it incumbent upon him, no less than upon the mother, to seek a modification of the decree to meet changed circumstances. While it may be argued that the mother, whose conduct created the problem, ought to be required to take the initiative and commence proceedings to justify her actions and her right to continued child support,

her failure to do so cannot excuse the father from continuing to pay support where a refusal to make payments detrimentally affects the welfare of the child. An unreasonable delay in seeking a revision of the decree, coupled with a failure to pay resulting in detriment to the child, can very easily be viewed as selfish and embittered conduct designed to punish the mother in disregard of the physical needs of the child. It should be noted that in at least two cases involving unusual circumstances we have upheld postdecree orders compelling payment of accrued support installments despite removal of the children from the state without consent of the father or leave of court.

"Unusual circumstances which alone or in combination with other facts may justify such an unconsented-to removal are: (1) The father's failure to make support payments prior to the removal; (2) the necessity of quick action by the mother to accept an attractive job opportunity in another state; and (3) the father's indifference to his visitation rights or to the removal of his children upon the transfer of the mother's new husband to a military post outside the United States.

"The record in this case reveals no such circumstances."

In *Stratton v. Stratton*, 67 S.D. 354, 358, 293 N.W. 183, 184-85 (1940), the court held the inequitable conduct of the wife in depriving the husband of his rights of visitation prevented her from enforcing payment of accrued alimony. The court said: "It is the contention of the appellant that the provision in the decree of divorce requiring respondent to pay alimony being unconditional in its terms, appellant is entitled to such payments notwithstanding the fact that she has never performed any of the obligations imposed upon her by said decree. In other words, having openly defied the court for more than ten years, and until the passage of time has rendered the performance of the obligations imposed upon her, to-wit:

to permit the respondent to enjoy the society of his little girl for occasional brief intervals—impossible, she now insists that respondent be compelled to perform the obligations imposed upon him, and that he be imprisoned until such obligations are performed. Appellant's conception of the duty and function of a court of equity is entirely wrong. A court of equity delights in doing equity, but nothing could be more inequitable than what appellant is asking the court to do in this case. The agreement of the parties was that respondent was to pay appellant certain sums of money as alimony and in consideration therefor appellant was to permit respondent to occasionally enjoy the society of his little child. This she steadfastly refused to do and for no reason in the world except pure malice.

"Appellant is not in court with clean hands and the court will leave her where it finds her. The Supreme Court of Minnesota recently reached the same result in a similar case. Anderson v. Anderson, Minn., 291 N.W. 508." See, also, *Pronesti v. Pronesti*, 368 Mich. 453, 118 N.W.2d 254 (1962); *Heidemann v. Heidemann*, 96 Idaho 602, 533 P.2d 96 (1974); *Pence v. Pence*, 223 Ark. 782, 268 S.W.2d 609 (1954); *Noble v. Noble*, 86 Nev. 459, 470 P.2d 430 (1970); *Levell v. Levell*, 183 Or. 39, 190 P.2d 527 (1948).

A number of courts have held that the controlling question in such cases is the best interests or welfare of the child. Where there is no prejudice to the child and public funds are not involved, payment of accrued child support will not be enforced where it would be inequitable between the parties to do so.

This principle was recognized in *McGee v. McGee*, 190 Neb. 415, 417, 209 N.W.2d 339, 340 (1973), where we said: "It must be emphasized that this rather extraordinary relief should not, and will not, be granted in every case seeking termination of child support. It is only in those rare cases like the instant one where the mother has removed the children from

the state and the jurisdiction of the court and has deprived the father of all visitation rights that suspension of child support payments should be granted. We do not in any way intimate that a dispute between parents as to visitation rights may be used by a father as a threat collaterally to relieve himself from his duty and obligation to support his children. But the removal of the children from the jurisdiction of the court without consent, together with the deprivation of all visitation rights and no suggestion or showing, after notice, that the children are in need or not properly taken care of warrants a court to invoke a suspension of the payments to preserve its jurisdiction in the matter. The remedy of suspension is the only one that can be used to meet an intentional violation of the law and destroy the jurisdiction of the court."

There is another basis upon which the respondent can obtain relief in this case. In *Goodman v. Goodman*, 173 Neb. 330, 113 N.W.2d 202 (1962), we held that child support payments which accrue after a petition to modify the judgment has been filed may be canceled. In *McGee v. McGee, supra*, a case involving a somewhat similar factual situation, we suspended child support payments retroactively to the date the children had been removed from the state by the mother.

McCown, J., joins in this dissent.