# GOVERNMENT OF THE VIRGIN ISLANDS ON BEHALF OF MARIA LEAHEY, Petitioner

## v.

## E. THOMAS STANWOOD, Respondent

Family No. S20/1984

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

October 23, 1985

CHRISTIAN, *Judge*

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION—THE ISSUES

In this matter, the Court is called upon to decide:

A. Whether in a Uniform Reciprocal Enforcement of Support Act (hereafter "URESA") proceeding failure or refusal of the custodial parent to permit the exercise of rights of visitation by the non-custodial parent with the children of the parties is a sufficient justification, and therefore a defense to a suit, for non-payment of the Court-ordered support.

B. Whether a contract by the parents of the affected minors that denial by the custodial parent of the exercise of rights of visitation with the children by the non-custodial parent is such a defense.

C. Whether in support of minors proceedings in which URESA is not a factor, failure or refusal of the custodial parent to permit the exercise of the right of visitation by the non-custodial parent with the children is a legal defense.

D. Whether a representation by the custodial parent to the non-custodial parent that from a given time certain the non-custodial parent shall not have the duty to pay the support ordered by the Court legally excuses the non-custodial parent from such duty.

### II. BACKGROUND

On May 15, 1973, E. Thomas Stanwood, hereafter "Respondent", was granted a decree of divorce absolute from Maria Leahey,[1] hereafter "Petitioner". In that decree, Petitioner was granted custody of the three minor children of the parties; Respondent was granted reasonable rights of visitation with the children "as the parties had agreed"; and the Respondent was ordered to "pay directly to the

---

[1] Subsequent to the divorce, Petitioner remarried.

Petitioner child support for all three children in the lump sum of $80.00 per week".

The agreement with regard to visitation appears to refer to the arrangements read into the record by the parties' attorneys at the divorce hearing on April 6, 1973. The Respondent's commitment to weekly payments of $80.00 to the Petitioner for child support and the Petitioner's commitment to allow the Respondent specific visitation rights were mutual, conditional and dependent promises characterized as an "enforceable contract" which would "survive [t]he decree".

Petitioner and the children have not resided in the Virgin Islands since the divorce. However, post-divorce matters have been litigated both in the Virgin Islands and in Philadelphia, Pennsylvania, Petitioner's present residence. On September 17, 1975, Judge Eileen Petersen simultaneously dismissed Petitioner's URESA petition in Maria B. Stanwood vs. E. Thomas Stanwood, Jr., Civil No. 71/1975, and reaffirmed Respondent's obligation to pay $80.00 per week for child support and his rights to specific visitation in the divorce case. Significantly, Judge Petersen provided Respondent with a legal remedy for any violation of his visitation rights, i.e., that upon any violation of his visitation rights, he was "to give immediate notice to [the] Court under oath and a bench warrant [would] forthwith issue for the arrest of Defendant, Maria B. Stanwood".

Again, in 1980, support and visitation issues were litigated. In Maria B. Stanwood vs. E. Thomas Stanwood, Jr., D.R. #272619 in the Court of Common Pleas, Philadelphia County, Family Court Division, the Pennsylvania Court approved the parties' Stipulation to, inter alia, the original child support order of $80.00 per week and specific visitation arrangements. Then, on March 12, 1980, Judge Eileen Petersen, sitting as a Judge of the District Court of the Virgin Islands by designation, adopted the parties' Philadelphia Stipulation and ordered that it "shall be deemed *to replace any prior agreements* and define the rights and duties between the said parties from this date forward . . . ," pursuant to the continuing jurisdiction of the Virgin Islands in the divorce action. (Emphasis added.)

Petitioner's current URESA petition for on-going child support for the parties' two (2) younger children[2] and for arrearages from January 1, 1981, to the present, was first heard by this Court on May 21, 1984. At that hearing, Respondent testified that in or about

---

[2] The oldest child has since become emancipated.

November, 1980, was the last time he saw his two (2) younger children and the last time he paid any child support to Petitioner. He also stated that he has made no efforts since that time to enforce his rights to visitation through legal measures available and familiar to him. In essence, until the instant URESA action forced the issue, the parties were in a stalemate or standoff; no child support paid and no visitation rights exercised. He stated that his reason for ceasing to pay the support is that Petitioner, not only refused and frustrated his efforts to exercise his rights of visitation, but assured him she does not need, and will not accept, the Court-ordered support from him any further; that she can manage without his help, so she will not permit him to see his children. This was in 1980. But in 1984, she suddenly reversed her position and filed this URESA petition, demanding, not only subsequent accruals on the account, but also all monies accrued from 1980 to the present under the Court order, a total of some $13,000.00. Only two children, not three, are now eligible for support.

## A

URESA contemplates litigation of one and only one issue, i.e., support.

■ As long as the need for support on the part of the children exists, the duty of giving such support by the non-custodial parent exists, and the non-custodial parent has the ability to give such support, the support must be paid. That is why the very first section of the Act making known the legislative intent behind the Act declares, "[t]he purposes of this subchapter are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect hereto". 16 V.I.C. Section 391. Nothing is said in this declaration of legislative intent that the rights of non-custodial parents to visitation with their children is a factor to be considered in URESA cases. And we hold that it is not. Or worse, that the duty to pay Court-ordered support is conditioned on the realization and enjoyment of the exercise of rights of visitation with the child or children by the non-custodial parent. And we hold that it is not. We hold that the remedies of child support and rights of visitation under URESA are not interdependent but independent remedies, that is, they are mutually exclusive. Put simply, a URESA proceeding is a single-issue proceeding and may not be cluttered up with other unrelated issues such as denial of the exercise of the rights of visitation with the children by the custodial par-

ent to the non-custodial parent. Kansas State Department of Social and Rehabilitation Services v. Henderson, 620 P.2d 60 (Colo. App., 1980). By its reciprocal and interstate nature, the act is ex parte and not designed for full-scale adversary proceedings. Brown v. Turnbloom, 89 Mich. App. 162, 280 N.W.2d 473 (1979). To the same effect is the Virgin Islands version of URESA. 16 V.I.C. Sections 391 et seq. See also 67 CJS, Section 15 which inter alia states, "The parents may not by agreement relieve themselves of the duty to support and educate their children . . . where the agreement provides that the mother shall have the custody of the children and the father shall have the right to see the children at the mother's home, the father is not excused from supporting the children under the agreement because the mother has removed her home to another state. Doig v. Palmer, 91 P.2d 443, 97 Utah 150. . . . The father is not excused from supporting his children under an agreement to do so because the mother has breached an independent covenant in the agreement. Thus, the father is not excused from his agreement because the mother has breached . . . her covenant that the father shall have temporary custody of the children at specified times or certain rights to visit the children . . . ." [underscoring ours]. And in 67 CJS, Section 20 we read: "The mother's violation of the Court order entitling the father to a right of reasonable visitation of the child does not relieve the father of the duty to support the child in accordance with the order". This is a New York case, Moses v. Moses, 85 N.Y.2d 15, 193 Misc. 890, which appears to be directly in point with the position we take in this case.

Since the URESA is not the appropriate legal avenue for litigation of visitation matters, the majority of courts faced with a defense or counterclaim involving visitation in an URESA action have disallowed such claims or pleadings. State, ex rel. Hubbard v. Hubbard, 110 Wis.2d 683, 329 N.W.2d 202 (1983); Ibach v. Ibach, 123 Ariz. 507, 600 P.2d 1370 (1979); Leland v. Fricke, 376 So.2d 432 (Fla.App., 1979); Clearwater County, Minnesota v. Petrash, 198 Colo. 231, 598 P.2d 138 (1979); Application of Meyers, 29 Misc. 2d 163, 219 N.Y.S.2d 63 (1961); People, ex rel. Winger v. Young, 33 Ill. Dec. 920, 78 Ill. App. 3d 512, 397 N.E.2d 253 (1979); Patterson v. Patterson, 2 Kan.App. 2d 447, 581 P.2d 824 (1978); Brown v. Turnbloom, 89 Mich.App. 162, 280 N.W.2d 473 (1979); Hoover v. Hoover, 271 S.C. 177, 246 S.E.2d 179 (1978). More significant, however, is the refusal of most courts to condition the payment of child support upon the respondent's attainment of visitation rights within an URESA action. Myers v. Young, 285 Pa.Super. 254, 427 A.2d 209

(1981); Rathmell v. Gardner, 61 Ill. Dec. 559, 105 Ill.App. 3d 986, 434 N.E.2d 1156 (1982); People, ex rel. Winger v. Young, supra.; San Diego County v. Elavsky, 12 Ohio Op. 3d 88, 58 Ohio St.2d 81, 388 N.E.2d 1229 (1979); Brown v. Turnbloom, supra; Carroll v. Carroll, 415 So.2d 102 (Fla. App., 1982); Leland v. Fricke, supra.; Davis v. Davis, 376 So.2d 430 (Fla. App., 1979).

The Respondent cites State, ex rel Arvayo v. Guerrero, 21 Ariz. App. 173, 517 P.2d 526 (1973) in support of his contention that the duty to pay support for the sustenance of minor children ordered by the Court and the right to the exercise of visitation rights by the non-custodial parent are mutually dependent rights, but his reliance on Guerrero is surprising, for that case stands for precisely the opposite view of the law, that these rights are independent and not interdependent.

## B

◼ In 1980, support and visitation issues between the parties were litigated. In Maria B. Stanwood v. E. Thomas Stanwood, Jr., D.R. #272619 in the Court of Common Pleas, Philadelphia County, Family Court Division, the Pennsylvania Court approved the Stipulation of the parties to, inter alia, the original order to pay $80.00 per week and specific visitation arrangements. On March 12, 1980, Judge Eileen Petersen, sitting as a Judge of the U.S. District Court of the Virgin Islands, adopted the parties' Philadelphia Stipulation and ordered that "it shall be deemed *to replace any prior agreements* and [shall] define the rights and duties between the said parties from this date forward". Therefore, it may be stated that the District Court of the Virgin Islands replaced any existing contract made at the outset, and apparently countenanced by the Court, with the Stipulation made in the Philadelphia Court by the parties which assuming the provision for interdependency of rights of support and visitation were valid, removed any such provision. Public policy dictates that all minor children be adequately supported financially. Any attempt of parents to contract away the right of minor children, whether for their personal self satisfaction or otherwise, is void as against public policy.

This is not to say the Respondent has no means of relief. He may bring an independent action in the divorce proceeding to hold anyone preventing him from enjoying his rights of visitation with his children in contempt and punished therefor. Or he can seek to bring his enjoyment of such rights to fruition by commencing an

action by virtue of, and pursuant to, the Uniform Child Custody Jurisdiction Act (UCCJA). 16 V.I.C. Sections 115 et seq.

C

■ Even in non-URESA cases for support of minors, we hold that the remedies of support and visitation rights are independent, are mutually exclusive, and not interdependent. Our reasons are many. First, that the duty of support is a duty owed to the child and not to the parent, and therefore no parent has the power, intentionally or by inadvertence, to frustrate or defeat it. Secondly, the paramount concern of the Court must be what is in the best interest of the child, not of the parent, such as satisfying the exercise of his or her right of visitation. Thirdly, the Court would be making itself a party to a cruel performance to participate in any scheme or undertaking which has as its end result the denial of Court-ordered support, which is needed by the children, and which the parent ordered to pay the same has both the duty and the ability to pay. See Wheeler v. Wheeler, 196 Kan. 697, 414 P.2d 1 (1966); Grimes v. Grimes, 179 Kan. 340, 295 P.2d 646 (1956); Culpepper v. Brewer, 242 Ga. 210, 248 S.E.2d 619 (1978). See also our excerpts from 67 CJS, Sections 15 and 20 supra, which we take the position are equally applicable here, in non-URESA cases.

D

■ ■ But Respondent established at the hearing, and we find, that he paid the Court-ordered support for all three children until November, 1980, when Petitioner told him in unmistakable terms that she would not accept any more child support from him, that she did not need his money [for support of the children] because she had remarried and now she had sufficient resources with which to take care of the children by herself. Despite Respondent's apparent willingness to continue the support payments, Petitioner stated in advance she would not accept the money. Respondent continued to try to see his children and pay the money, but Petitioner would not permit either to take place. Respondent, relying on this conduct of Petitioner, ceased efforts to either pay the Court-ordered support or visit with his children. Now, four years later, Petitioner suddenly makes an about-face; she not only wants the Court-ordered support prospectively, but all amounts which would have accrued from 1980 to the present. We hold that by Petitioner's conduct it would be inequitable to pay her the amount she refused to accept from 1980 to

the date of her 1984 Petition, that it is probable that her conduct has operated to the prejudice of the Respondent, that she is therefore estopped from making such claim. Anno. 5 ALR. 4 1015; Cordova v. Lucero, 629 P.2d 1020 (Ariz. 1981); Kaminski v. Kaminski, 87 Cal. Reports, 453 (1970). See also Szamocki v. Szamocki (1975, 2d Dist.), 47 Cal. App. 3d 812, 121 Cal. Reports, 231. However, to the extent that the need for support, the duty of providing it, and the ability to provide it still exist, we hold that Respondent must pay amounts accruing from the date of the new petition. From this date he cannot be heard to say he has been misled, caught by surprise, or prejudiced.

As to the weekly amount to be paid, the defendant was ordered to pay $80.00 a week for three children in 1973. Now in 1985 only two children remain to be supported. But they are 12 years older, and clearly their needs are greater. In addition, the fact that inflation is a big negative factor is undeniable. Finally, the District Court did not order that support of a certain sum be paid on a per-child basis but a sum in gross for all three children. We hold that the $80.00 a week payable for three children in 1973 is not too much to be paid for two children in 1985, all other factors being equal. Therefore, Respondent shall continue to pay the $80.00 a week beginning from the date the 1984 petition was filed.